IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SUMMIT RESIDENTIAL SERVICES §
LLC, AS TRUSTEE FOR BEACON HILL §
VILLAGE 11B TRUST, §
  §
  §
                    Plaintiff, §
  §   Civil Action No. 3:15-CV-1935-D
VS. §
  §   *This memorandum opinion and order was
OCWEN LOAN SERVICING, LLC, §   filed under seal on September 28, 2017. It is now
  §   being filed without objection as a public document.
                    Defendant. §

MEMORANDUM OPINION
AND ORDER

Intervenor New Penn Financial, LLC d/b/a Shellpoint Mortgage Servicing, LLC

("Shellpoint") moves for summary judgment on the claims for declaratory and injunctive

relief of plaintiff Summit Residential Services, LLC ("Summit") and the counterclaims for

declaratory relief and breach of contract of Shellpoint. For the reasons that follow, the court

grants Shellpoint's motion for summary judgment on Summit's claims for declaratory and

injunctive relief, denies Shellpoint's motion for summary judgment on its breach of contract

counterclaim and its counterclaim for declaratory judgment, and raises *sua sponte* that

Shellpoint is entitled to recover attorney's fees under the terms of a settlement agreement.

I

This case concerns residential property located in Irving, Texas (the "Property"). Gae

K. McAfee ("McAfee") purchased the Property in April 2008, borrowing $197,550 from

Bank of America ("BOA") by executing, *inter alia*, a promissory note ("Note") and a deed

of trust ("Deed of Trust"). BOA serviced the loan ("Loan").

In 2010 McAfee fell behind on the Property's mandatory homeowners association dues. On February 2, 2010, pursuant to a lien on the Property, the homeowners association foreclosed on, and sold, the Property to SFTF Holdings LLC ("SFTF") through a foreclosure sale.

Later that month, SFTF filed suit against BOA seeking declaratory relief to quiet title to the Property and injunctive relief to halt a foreclosure sale that BOA had allegedly scheduled. SFTF and BOA settled the lawsuit in August 2011. In their settlement agreement (the "Settlement Agreement"), SFTF stated that it "no longer asserts and will not in the future assert challenges to BOA's [and] its successors and assigns' rights concerning the Property, and specifically BOA's [and] its successors and assigns' right to foreclose on the Property." D. App. 35. In a separate provision, SFTF agreed to fully discharge BOA and its successors, assigns, and affiliates from any and all claims related to the Property arising prior to the Settlement Agreement. D. App. 35-36. BOA likewise provided a reciprocal release to SFTF. D. App. 36. SFTF's lawsuit was ultimately dismissed with prejudice and closed.

BOA continued to service the Loan until September 2012, when defendant Ocwen Loan Servicing, LLC ("Ocwen") became the Loan servicer. Between September 2012 and December 2013, Ocwen sent McAfee multiple account statements requesting that McAfee make required payments. These statements requested less than the total accelerated amount of the Loan. On June 14, 2014 Ocwen sent McAfee a Notice of Default, warning that "[f]ailure to bring your account current will result in our election to exercise our right to

foreclose on your property." D. App. 86. Ocwen also advised McAfee that the total obligation of the Loan would be due upon acceleration. In March 2015 Ocwen filed a Notice of Foreclosure on the Property.

While Ocwen was servicing the Loan, Summit acquired the Property in February 2014. Summit is both an affiliate and assignee of SFTF. After Ocwen filed the Notice of Foreclosure, Summit brought this lawsuit in April 2015 seeking declaratory relief to quiet title to the Property and injunctive relief to halt any potential foreclosure sale on the Property. Summit alleges that because BOA accelerated the Note secured by the Deed of Trust "no later than February 12, 2010," the Deed of Trust became unenforceable after the applicable four-year statute of limitations expired sometime in 2014.

In January 2016 Ocwen transferred servicing of the Loan to Shellpoint. As the new Loan servicer, Shellpoint intervened in this lawsuit, and the parties jointly stipulated to dismissing Ocwen. In addition to disputing Summit's claims, Shellpoint counterclaims for breach of contract and for declaratory judgment that the court "confirm the validity of the Settlement Agreement and dismiss [Summit's] claims with prejudice." Compl. in Intervention at 5 ¶ 21. Shellpoint also counterclaims for attorney's fees under Texas law.

Shellpoint now moves for summary judgment on all claims and counterclaims. Summit opposes the motion.

II

Shellpoint moves for summary judgment on multiple claims and counterclaims, for some of which it will have the burden of proof at trial and for others of which it will not. To

be entitled to summary judgment on a counterclaim for which Shellpoint will have the burden of proof at trial, it "must establish 'beyond peradventure all of the essential elements of the [counterclaim][.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995 (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that Shellpoint must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923–24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

When Shellpoint will not have the burden of proof at trial on Summit's claim, Shellpoint need only point the court to the absence of evidence of any essential element of that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it does so, Summit must go beyond its pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Summit's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summit's failure to produce proof as to any essential element of the claim renders all other facts immaterial. *TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where Summit fails

to meet this burden.  *Little*, 37 F.3d at 1076.

III

The court turns first to Summit's claim that the Deed of Trust is unenforceable because the applicable statute of limitations has run.  Summit alleges that BOA filed a notice of foreclosure on the Property "no later than February 12, 2010."  Compl. 4.  It maintains that, as a result, the applicable four-year statute of limitations expired on February 12, 2014 at the latest, and that the scheduled foreclosure sale of the Property, posted in August 2015, is time-barred.

A

Where, as here, the proper resolution "turns on the interpretation of Texas law, '[this court is] bound to apply [Texas] law as interpreted by the state's highest court.'"  *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010) (second brackets in original) (quoting *Barfield v. Madison Cnty., Miss.*, 212 F.3d 269, 271-72 (5th Cir. 2000)).  Under Texas law, "[a] sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien" must take place within four years after the day the cause of action accrues.  Tex. Civ. Prac. & Rem. Code Ann. § 16.035(b) (West 2017).  When this four-year period expires, "the real property lien and a power of sale to enforce the real property lien become void."  *Id.* at § 16.035(d); *Cline v. Deutsche Bank Nat'l Tr. Co.*, 2015 WL 4041791, at *5 (N.D. Tex. July 2, 2015) (Fitzwater, J.) (citing *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App. 2010, no pet.)).  If a noteholder has the option to accelerate, then the date of accrual is the date the noteholder exercises the option.

*Khan*, 371 S.W.3d at 353 (citing *Holy Cross Church of God in Christ v. Wolf*, 33 S.W.3d 562, 566 (Tex. 2001)). Although accrual is a legal question, "whether a holder has accelerated a note is a fact question." *Cline*, 2015 WL 4041791, at *5 (quoting *Holy Cross*, 44 S.W.3d at 568).

Abandoning acceleration before the limitations period expires restores the contract to its original condition, including the note's original maturity date. *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 104 (5th Cir. 2015); *see also Cline*, 2015 WL 4041791, at *5; *Khan*, 371 S.W.3d at 353; *Holy Cross*, 44 S.W.3d at 567; *Clawson v. GMAC Mortg., LLC*, 2013 WL 1948128, at *3 (S.D. Tex May 9, 2013). Therefore, if a noteholder abandons acceleration, § 16.035(b)'s clock resets. Both Texas courts and courts in this circuit have held that "the parties can abandon acceleration [ ] by the parties' agreement or actions." *Khan*, 371 S.W.3d at 356 (citing *San Antonio Real-Estate, Bldg. & Loan Ass'n v. Stewart*, 61 S.W. 386, 388 (Tex. 1901)); *see also In re Rosas*, 2014 WL 1779437, at *10 (Bankr. W.D. Tex. May 5, 2014); *Clawson*, 2013 WL 1948128, at *3; *Santibanez v. Saxon Mortg. Inc.*, 2012 WL 3639814, at *2 (Tex. App. Aug. 23, 2012, no pet.). A noteholder may abandon acceleration through several possible actions, "including providing account statements seeking less than the full accelerated amount and mailing new notice-of-intent-to-accelerate letters," in addition to continuing to accept payment on a note while opting not to pursue other remedies. *Cline*, 2015 WL 4041791, at *5; *see also Boren*, 807 F.3d at 106 (citing *Leonard v. Ocwen Loan Servicing*, 616 Fed. Appx. 677, 680 (5th Cir. 2015) (holding that account statements put debtor on notice that lender had abandoned previous acceleration)). Indeed, joint action

- 6 -

of the parties is not required to abandon the acceleration. Rather, a party may abandon the acceleration unilaterally. *Leonard*, 616 Fed. Appx. at 680; *see also Clawson*, 2013 WL 1948128, at *4; *Holy Cross*, 44 S.W.3d at 566-67.

B

Summit asserts that the statute of limitations for enforcing the Property's Deed of Trust has run because BOA accelerated the Loan sometime before February 12, 2010. Shellpoint contests this, contending that Summit has offered no evidence that BOA accelerated the Loan at any point. Shellpoint also maintains that, even if the Loan was accelerated in February 2010, Ocwen abandoned any acceleration when it sent multiple account statements requesting less than the full amount due to McAfee between 2012 and 2013.

The court assumes *arguendo* that BOA accelerated the Loan sometime before February 2010. Regardless, the court concludes that there is no genuine issue of material fact that Ocwen, through its actions as the Loan servicer, abandoned any acceleration prior to when the statute of limitations in § 16.035(b) expired. Shellpoint has provided over 15 account statements that Ocwen sent to McAfee requesting less than the full accelerated amount—the earliest of which is dated September 12, 2012. Summit has offered no evidence that disputes the accuracy of these statements. Nor has Summit rebutted the case law that indicates that these account statements put McAfee on notice that Ocwen was abandoning BOA's acceleration. The court therefore holds that a reasonable jury could only find that Ocwen effectively abandoned any acceleration through the account statements it sent to

McAfee.

C

Summit asserts, however, that even if Ocwen did abandon acceleration of the Loan, Shellpoint is estopped from making this argument through the doctrines of both equitable estoppel and quasi-estoppel. First, Summit maintains that neither BOA nor Ocwen notified SFTF or its assignees that they intended to abandon acceleration; instead, they only sent notice to McAfee. Second, Summit contends that Shellpoint did not raise an abandonment defense until its summary judgment motion. Summits maintains that because Shellpoint did not assert the argument in any prior pleadings, Shellpoint has impermissibly shifted to a contradictory position and is barred by quasi-estoppel.

1

"Generally, Texas law defines estoppel as 'conduct which causes the other party to materially alter his position in reliance on that conduct.'" *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 311 (5th Cir. 2005) (quoting *Braugh v. Phillips*, 557 S.W.2d 155, 158 (Tex. App. 1977, writ ref'd n.r.e.)).

> The doctrine of equitable estoppel requires "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations."

*Canal Indem. Co. v. Palmview Fast Freight Transp., Inc.*, 750 F.Supp.2d 743, 750 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773,

778 (Tex. 2008)).

Quasi-estoppel is a closely related doctrine. It "precludes a party from asserting, to the disadvantage of another, a right inconsistent with a position previously taken." *Rodriguez v. Lockhart Contracting Servs., Inc.*, 499 S.W.3d 48, 64 (Tex. App. 2016). "The doctrine applies when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit." *Hancock v. Chi. Title Ins. Co.*, 635 F.Supp.2d 539, 563 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000)), *aff'd*, 636 F.3d 699 (5th Cir. 2011). Unlike equitable estoppel, quasi-estoppel requires no showing of false representation or detrimental reliance. *See Cambridge Production, Inc. v. Geodyne Nominee Corp.*, 292 S.W.3d 725, 732 (Tex. App. 2009, pet. denied); *Fasken Land and Minerals, Ltd. v. Occidental Permian Ltd.*, 225 S.W.3d 577. 593 (Tex. App. 2005, pet. denied).

2

In this case, equitable estoppel does not bar Shellpoint from asserting that any loan acceleration was abandoned. Summit has failed to establish the first element of equitable estoppel: that Ocwen falsely represented or concealed material facts.[1] Summit states that Ocwen only communicated with McAfee, a person with "no interest in the [P]roperty." P. Br. 5. Summit maintains that, as the owner of the Property, it should have received notice

---

[1]Because Summit has failed to raise a genuine fact issue on this element, the court need not analyze the sufficiency of the other four elements of equitable estoppel.

of Ocwen's intent to abandon acceleration on the Loan.

Summit has not demonstrated that Ocwen was required to notify Summit of its intent to abandon the acceleration. Texas courts routinely refrain from requiring that noteholders provide notice of foreclosure-related actions to anyone besides the borrowers and other parties to the deed of trust. This is true even when the other party is the owner of the land secured by the loan in question. *See, e.g., Hausmann v. Tex. Sav. & Loan Ass'n*, 585 S.W.2d 796, 799-800 (Tex. Civ. App. 1979, writ ref'd n.r.e.) (holding that even holder of debt's knowledge that property is owned by transferee of mortgagor imposes no legal duty to give transferee notice); *Stanley v. CitiFinancial Mortg. Co.*, 121 S.W.3d 811, 817 (Tex. App. 2003, no pet.) ("There is no legal requirement that personal notice of a foreclosure be sent to persons not parties to the deed of trust."); *see also Cuauhtli v. Chase Home Fin. LLC*, 252 Fed. Appx. 690, 692 (5th Cir. 2007) (per curiam) ("The personal notice that must be given to debtors is not owed to residents of the property who are not personally liable for the debt."); *Rodriguez v. Ocwen Loans Servicing, LLC*, 306 Fed. Appx. 854, 856 (5th Cir. 2009) (per curiam) (quoting *Stanley*, 121 S.W.3d at 817); 30 Tex. Jur. 3d Deeds of Trust and Mortgages § 180, Westlaw (database updated 2017) ("The landowner who is not personally liable on the debt need not be given notice" of a foreclosure sale.).[2] Because Texas courts

_____

[2]Moreover, Texas courts establish specific steps "[t]o become a party to a deed of trust and obtain the rights of a borrower under a deed of trust, such as the right to notice and reinstatement." *402 Lone Star Prop., LLC v. Bank of Am., N.A.*, 2014 WL 4058715, at *3 (Tex. App. Aug. 12, 2014) (mem. op.). To do so, "a purchaser of real property must take the affirmative steps of requesting and receiving written approval from the lender to assume the borrower's obligations under the deed of trust." *Id.* (citing *Montenegro v. Ocwen Loan*

consistently refrain from expanding notice requirements beyond the borrower/noteholder relationship, in absence explicit authority to the contrary, this court declines to do so in the abandonment of acceleration context as well.

Without a legal right to receive notice of abandonment, Summit cannot show under these facts that Ocwen concealed abandoning acceleration. Although Ocwen only provided to McAfee account statements requesting less than the Loan's full accelerated amount, this is not the equivalent of actively concealing the abandonment from Summit. *Cf. Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983) (holding that for fraudulent concealment—a form of equitable estoppel—defendant must have duty to disclose to plaintiff). Here, Ocwen made disclosures to the party to whom it had a duty to disclose: McAfee. Ocwen had no obligation to communicate to Summit regarding the status of the Loan, nor did it promise to do so. Moreover, Summit makes no claim that Ocwen falsely represented the status of any abandonment in response to Summit's inquiries. It cannot assert this because Summit made no such inquiries. Summit's incorrect assumption regarding the Loan's status does not support a viable equitable estoppel claim.

Similarly, the court declines to conclude that quasi-estoppel forecloses Shellpoint's abandonment argument. Summit notes that Shellpoint did not raise the abandonment of

---

*Servicing, LLC*, 419 S.W.3d 561, 565, 571) (Tex. App. 2013, pet. denied) (holding that although plaintiff had made monthly and lump-sum payments to cure debtor's default, plaintiff was not entitled to notice of foreclosure because he had not assumed debtor's obligations in writing and assumption had not been approved by lender, as required in deed of trust)). Summit does not allege that it pursued these steps.

acceleration argument in previous filings. Summit contends that by raising the argument in a summary judgment motion, Shellpoint has taken inconsistent positions to Summit's detriment and should be quasi-estopped. The court disagrees.

Shellpoint has not taken inconsistent positions in this lawsuit. First, it was not required to raise this argument at an earlier point in the case. Summit offers no citations, and the court can find no case law, indicating that the abandonment of a loan's acceleration is an affirmative defense that is waived if not raised in the first substantive pleading. Therefore, the fact that Shellpoint did not raise the issue in its complaint in intervention is immaterial.[3] Second, raising abandonment at this stage is not inconsistent with Ocwen's amended answer, in which it denied Summit's assertion that the expiration of the statute of limitations made the Deed of Trust unenforceable. *See* D. (Ocwen) Am. Answer ¶ 23 ("Ocwen denies the allegation in paragraph VII(A)(3) of the Complaint."). Because Shellpoint has not taken inconsistent positions in this lawsuit, quasi-estoppel does not apply.

For the foregoing reasons, the court holds that Summit has failed to demonstrate that there is a genuine issue of fact that Ocwen abandoned any acceleration of the Loan prior to the expiration of § 16.035(b)'s limitation period.

---

[3]Shellpoint, as an intervenor, has not filed an answer in this case.

IV

The court now decides whether the Settlement Agreement also bars Summit's current lawsuit.

A

Settlement agreements are "enforceable in the same manner as any other written contract." Tex. Civ. Prac. & Rem. Code Ann. § 154.071(a) (West 2017); *see also Loya v. Loya*, ___ S.W.3d ___, 2017 WL 1968033, at *3 (Tex. May 12, 2017); *Garza v. Villareal*, 345 S.W.3d 473, 479 (Tex. App 2011, no pet.). When interpreting a contract, the primary concern of the court is to "'ascertain the true intentions of the parties as expressed in the instrument.'" *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, L.P., 426 S.W.3d 59, 63 (Tex. 2014) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "We give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or difference sense." *Heritage Res. Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). The contract must be read as a whole rather than by isolating a certain phrase, sentence, or section of the agreement. *Stafford v. Allstate Life Ins. Co.*, 175 S.W.3d 537, 541 (Tex. App. 2005, no pet.) (citing *State Farm Life Ins. Co. v. Beason*, 907 S.W.2d 430, 433 (Tex. 1995)).

In Texas, a release of claims discharges released parties from certain claims and extinguishes those claims against the released parties "as effectively as would a prior judgment between the parties." *PetroHunt, L.L.C. v. Williams-Southern Co.*, 2014 WL 12595647, at *4 (N.D. Tex. Jan. 23, 2014) (Solis, J.) (citing *El Paso Natural Gas Co. v.*

*Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 314 n.15 (Tex. 1999); *Dresser Indus. v. Page Petroleum*, 853 S.W.2d 505, 508 (Tex. 1993)).  Releasing instruments must "mention" the claim to be released in order to effectively release a claim.  *Mem'l Med. Ctr. of East Tex. v. Keszler*, 943 S.W.2d 433, 434-35 (Tex. 1997); *Victoria Bank and Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991).  Any claims not "clearly within the subject matter" of the agreement are not released, even if those claims exist when the parties execute the agreement.  *Victoria Bank*, 811 S.W.2d at 938.  "It is not necessary, however, for the parties to anticipate and explicitly identify every cause of action relating to the subject matter of the release."  *Stafford*, 175 S.W.3d at 541 (citing *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000)).  A valid release may cover both claims existing at the time of execution or unknown claims and damages that develop in the future.  *Keck, Mahin & Cate*, 20 S.W.3d at 698.

B

BOA and SFTF executed the Settlement Agreement to resolve SFTF's prior lawsuit concerning the Property in 2011.  Under the "Agreement" section, the paragraph entitled "Representations and Warranties by SFTF Regarding the Property" provides that "SFTF no longer asserts and will not in the future assert challenges to BOA's [and] its successors and assigns' rights concerning the Property, and specifically BOA's [and] its successors and assigns' right to foreclose on the Property."[4]  D. App. 35.  The "Reciprocal Limited General

_____

[4]The Settlement Agreement provides that the terms "SFTF" and "BOA" include "their respective predecessors, successors, assigns, parent companies, subsidiaries, and affiliates."

Release" can be found two paragraphs later.  In relevant part, it reads:

> Effective upon the execution of this Settlement Agreement and except for the obligations set forth herein, SFTF and [its successors and assigns] (collectively and individually, the "SFTF Releasing Parties"), hereby fully, finally and completely release and forever discharge BOA and [its successors and assigns] (collectively and individually the "BOA Released Parties") of and from any and all claims, controversies, disputes liabilities, obligations, demands, damages, debts, liens, rights, actions and causes of action of any and every nature whatsoever from the beginning of time through the execution date that refer or relate to any claim arising out of or related to the Property or the Action, including, but not limited to, any possible right to pursue a declaratory judgment or injunctive relief against BOA based on or related to the Property.

D. App. 36.[5]  Following BOA's own release provisions, additional paragraphs state that the parties would take action to dismiss SFTF's lawsuit with prejudice after executing the Settlement Agreement.

C

Shellpoint asserts that this lawsuit is barred under the Settlement Agreement.  It maintains that the terms of the Settlement Agreement preclude Summit, as SFTF's affiliate and assignee, from pursuing the injunctive and declaratory relief sought in this suit.  Summit counters that the Shellpoint's reading is too broad, and that the Settlement Agreement does not prevent an SFTF successor from asserting its rights regarding the Property in this case.

_____

D. App. 34.

[5]This text, along with all text in the "Reciprocal Limited General Relief" paragraph, is in uppercase.  The court has converted the text to upper and lower case.

In particular, Summit relies on Texas precedent indicating that "general categorical release clauses are narrowly construed." *Victoria Bank*, 81 S.W.2d at 938.

No matter how the Settlement Agreement is construed, however, its plain text establishes that Summit's present suit is barred. At first, the relevant release clause appears to support Summit's position. Although the language broadly releases "any and all claims . . . and causes of action" related to the Property, the released claims are limited to those arising "from the beginning of time through the execution date" of the Settlement Agreement. D. App. 36. Any cause of action relating to the Deed of Trust's statute of limitations would have arisen subsequent to the Settlement Agreement's execution in 2011. Limited to only this language, the Settlement Agreement would not bar the current action.

But a more specific provision countermands this interpretation. On its first page, the Settlement Agreement provides that SFTF and its successors in interest "will not in the future assert challenges to BOA's [and] its successors and assigns' rights concerning the Property, and *specifically BOA's [and] its successors and assigns' right to foreclose on the Property*." D. App. 35 (emphasis added). Unlike the release provisions, no language limits the time period for such challenges. Thus this text need not be read broadly to encompass this lawsuit, which explicitly requests the court to "permanently enjoin Defendant from attempting to enforce the deed of trust" and prevent Shellpoint from foreclosing on the Property. Compl. at 5,¶ 6. Because the filing of the instant suit contradicts the clear text, Summit has violated an express provision of the Settlement Agreement.

None of the cases on which Summit relies can overcome this plain reading. Each

cited case provides insight on what is permissibly "mentioned" in a general release clause. For example, in *Victoria Bank* the settlement agreement in question only provided a release for claims related to a specific loan transaction. *Victoria Bank*, 811 S.W.2d at 938. Because the subsequent suit derived from an unrelated purchase of cattle, the *Victoria Bank* court held that the release covered different subject matter. *Id.* at 939. The other cases provide similar reasoning. *See, e.g., Naik v. Naik*, 438 S.W.3d 166, 174-76 (Tex. App 2014, no pet.) (holding that trial court did not err in ruling that tangential note was not mentioned in a settlement agreement pertaining to an underlying dispute); *A2D Techs. Inc. v. MJ Sys.*, 269 Fed. Appx. 537, 542-43 (5th Cir. 2008) (per curiam) (holding that subsequent suit did not meet settlement agreement's specified criteria to qualify as released claim). Here, however, there is explicit language outside of the release clause that effectively bars this lawsuit. Therefore, the court need not consider what a general release clause does and does not "mention." The plain language of the contract controls.

From this analysis, Shellpoint has established beyond peradventure that the Settlement Agreement bars this lawsuit. The court therefore grants Shellpoint's motion for summary judgment on all of Summit's claims and dismisses them with prejudice.

V

Having concluded that Shellpoint is entitled to summary judgment on Summit's claims, the court now turns to Shellpoint's breach of contract counterclaim.

A

In Texas, a breach of contract claim requires proof four elements: "(1) the existence

of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendant's breach of contract, and (4) damages to the plaintiff resulting from the breach." *Hoffman v. L & M Arts*, 2011 WL 3567419, at *4 n.2 (N.D. Tex. Aug. 15, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003)); *see also Palmer v. Espey Huston & Assocs.*, 84 S.W.3d 345, 353 (Tex. App. 2002, pet. denied).

B

Because the court has established the validity of the Settlement Agreement, the respective performance of duties, and Summit's violation of the Settlement Agreement, it now focuses on the fourth and final element of Shellpoint's breach of contract counterclaim: whether Shellpoint can allege damages resulting from Summit's breach.

The only damages Shellpoint asserts are the attorney's fees incurred in this lawsuit. Shellpoint maintains that, had Summit abided by the Settlement Agreement, Shellpoint would not have incurred attorney's fees needed to defend itself. Thus Summit maintains it is entitled to these attorney's fees as damages to put itself in the same position as it would have been in had Summit not breached the Settlement Agreement.[6]

1

"Under Texas law, the measure of breach-of-contract damages is 'just compensation for the loss or damages actually sustained.'" *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, 521 F.3d 472, 482 (5th Cir. 2008) (quoting *Stewart v. Basey*, 245 S.W.2d 484, 486 (Tex.

---

[6]Shellpoint has provided a declaration from its attorney, supported by invoices, to establish the amount of attorney's fees.

1952)). Texas distinguishes "between attorney's fees *as* actual damages and recovery of attorney's fees *incident to* recovery of other actual damages." *Edom Corner, LLC v. It's the Berry's, LLC*, 2016 WL 1254017, at *2 (Tex. App. Apr. 8, 2016) (mem. op.) (emphasis in original). Attorney's fees are generally not recoverable as actual damages. *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d 168, 172 (Tex. 2013)*; Worldwide Asset Purchasing, L.L.C. v. Rent-A-Ctr. E., Inc.*, 290 S.W.3d 554, 570 (Tex. App. 2009, no pet.); *Haden v. David J. Sacks, P.C.*, 222 S.W.3d 580, 597 (Tex. App. 2007), *rev'd on other grounds*, 266 S.W.3d 447, 448 (Tex. 2008). "While attorney's fees for the prosecution or defense of a claim may be compensatory in that they help make the claimant whole, they are not, and have never been damages." *In re Nalle*, 406 S.W.3d at 173; *see also Shafer v. Gulliver*, 2010 WL 4545164, at *11 (Tex. App. Nov. 12, 2010, no pet.) (mem. op.) ("The attorney's fees incurred by the [plaintiffs] for prosecuting their breach of contract claim against the [defendants] are not economic damages.").

Attorney's fees from prior litigation may be included as actual damages in a subsequent lawsuit. *See In re Nalle*, 406 S.W.3d at 174-75 (holding that law firm's billed attorney's fees from prior litigation qualified as compensatory damages in subsequent breach of contract claim); *Akin, Gump, Strauss, Hauer & Field, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 119 (Tex. 2009) (holding that plaintiff in legal malpractice suit could recover damages for attorney's fees paid in underlying suit); *Guffey v. Clark*, 1997 WL 142750, at *3 (Tex. App. Mar. 31, 1997, writ denied) (holding that attorney's fees incurred in prior litigation were recoverable as foreseeable consequence of settlement breach). No

Texas court, however, has extended this exception to allow the recovery of attorney's fees billed to defend or prosecute an action as actual damages in that same action. *See Haubold v. Med. Carbon Research Inst., LLC*, 2014 WL 1018008, at *8 (Tex. App. Mar. 14, 2014, no pet.) (mem. op.) ("[Defendant] has cited no Texas cases, and we have found none, holding that attorney's fees incurred to defend or prosecute an action are recoverable in that same action as actual damages."); *Vianet Group PLC v. Tap Acquisition, Inc.*, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016) (Boyle, J.) ("Plaintiffs may recover attorneys' fees incurred in the [prior] State Court Action as the actual damages of their breach claim, but may not recover the fees they incurred prosecuting their breach claim as such [in the current suit].").

2

Shellpoint has not established beyond peradventure that it is entitled to recover attorney's fees as breach-of-contract damages. Shellpoint primarily relies on *Guffey*, asserting that the court may award attorney's fees as damages when they are "the natural, probable, and foreseeable consequence of the breach." *Guffey*, 1997 WL 142750, at *3. The *Guffey* court, however, only awarded the attorney's fees incurred in prior litigation as actual damages. *Id.* at *3-4. The court separately addressed the attorney's fees for the current litigation. *Id.* at *5. It held that because the plaintiff had prevailed on the breach of contract claim by recovering the prior attorney's fees, the plaintiff was authorized under Tex. Civ. Prac. & Rem. Code § 38.001(8) to recover the current litigation's fees incident to its other

damages—*not* as actual damages.[7]  *Id.* at *5; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2017).  The fact that the *Guffey* court felt compelled to award the attorney's fees of the prior case one way and those of case before it another illustrates the strict formalism of Texas's approach to awarding attorney's fees as damages.  Applying Texas law in this case, the court holds that Shellpoint's attorney's fees in this litigation cannot be alleged as actual damages.  Without damages, Shellpoint is unable to meet all of the elements of a breach of contract claim.  Thus the court denies Shellpoint's motion for summary judgment on its breach of contract counterclaim.

## VI

Although Summit has not established that it can recover attorney's fees as an element of its breach of contract claim, this court can still award attorney's fees incident to other relief.  Additionally, the court can raise a ground for summary judgment *sua sponte*, provided it affords the opposing party notice and a fair opportunity to respond.  *See, e.g., Nunn v. State Farm Mut. Auto. Ins. Co.*, 729 F.Supp.2d 801, 810 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar.14, 2006) (Fitzwater,

---

[7]Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) does not make attorney's fees available for Shellpoint in this case.  Under § 38.001(8), the successful party can recover reasonable attorney's fees in a breach of contract action "*in addition* to the amount of a valid claim and costs."  Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (emphasis added).  Texas courts hold that "there must be a recovery of money, or at least something of value" for a party to recover attorney's fees under § 38.001(8).  *Kenneth Leventhal & Co. v. Reeves*, 978 S.W.2d 253, 257-58 (Tex. App 1998, no pet.); *see also Haubold*, 2014 WL 1018008, at *6.  Because Shellpoint alleged no other damages besides attorney's fees, § 38.001(8) provides no support for Shellpoint's request for attorney's fees.

J.)).

Texas law follows the American Rule and "prohibits the recovery of attorney's fees from an opposing party in legal proceedings unless authorized by statute or contract." *Tucker v. Thomas*, 419 S.W.3d 292, 295 (Tex. 2013) (citing *1/2 Price Checks Cashed v. United Auto Ins. Co.*, 344 S.W.3d 378. 382 (Tex. 2011)).  Here, the Settlement Agreement contractually provides for attorney's fees.  Paragraph 18 states, in relevant part:

> [S]hould any Party be required to bring legal action to enforce its rights under this Settlement Agreement, the prevailing Party in such action shall be entitled to recover its reasonable attorney fees and costs from the other Party or Parties, in addition to any other relief to which it is entitled.

D. App. 39.  It further notes that "Party" and "Parties" are used to refer to both SFTF and BOA, and that "SFTF and BOA also include their respective predecessors, successors, assigns, parent companies, subsidiaries, and affiliates."  D. App. 34.  Under ¶ 18, in a suit enforcing the Settlement Agreement between Shellpoint and Summit—as successors and assigns of BOA and SFTF, respectively—the prevailing party is contractually "entitled to recover its reasonable attorneys fees and costs."

The analysis in § IV demonstrates that Summit violated the Settlement Agreement by challenging the right of a BOA successor to foreclose on the Property.  *See supra* § IV. Shellpoint was required to intervene and successfully enforce the relevant provision of the Settlement Agreement, making Shellpoint a "prevailing party."  Thus the court can award Shellpoint attorney's fees in this case—without running afoul of the American Rule—because such fees are authorized by contract.

The court therefore raises *sua sponte* that Shellpoint is contractually entitled to recover its reasonable attorneys fees and costs as the prevailing party in a legal action to enforce its rights under the Settlement Agreement.

## VII

The court now turns to Shellpoint's request for declaratory relief. Shellpoint maintains that it is "entitled to a declaration with respect to the scope, validity, and enforcement of the Settlement Agreement and may recover attorneys' fees from [Summit] pursuant to the Federal Declaratory Judgment Act." D. Br. 17.

### A

Federal courts have broad discretion to grant or refuse declaratory judgment. *See Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). This statute is "an authorization, not a command." *Public Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962) (per curiam). It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Id.* But "[a]lthough 'the district court's discretion is broad it is not unfettered.'" *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994) (quoting *Travelers Inc. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993)). The court cannot dismiss a declaratory judgment action "on the basis of whim or personal disinclination." *Id.* (quoting *Travelers*, 996 F.2d at 778).

Accordingly, the Fifth Circuit has established certain factors to guide a district court's discretionary decision whether to dismiss a declaratory judgment action. The factors include:

> whether (1) there is a pending state action in which all of the matters in controversy may be fully litigated; (2) plaintiff filed suit in anticipation of a lawsuit filed by defendant; (3) plaintiff engaged in forum-shopping in bringing the action; (4) possible inequities exist in allowing plaintiff to maintain the action; (5) federal court is a convenient forum for parties and witnesses; (6) retaining the lawsuit in federal court would further judicial economy; and (7) the federal court must construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the parties is pending.

*Kougl v. Xspedius Mgmt. Co.*, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005) (Fitzwater, J.) (citing *St. Paul Ins.*, 39 F.3d at 590-91). These factors can be grouped into three considerations: the allocation of decision making power between state and federal courts, fairness, and efficiency. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390-91 (5th Cir. 2003).

"A federal district court should avoid duplicative or piecemeal litigation where possible." *Id.* at 391. Indeed, this court has dismissed declaratory judgment actions where a plaintiff "seeks a declaratory judgment to the same effect as its breach of contract action." *Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (Fitzwater, J.); *see also Kougl*, 2005 WL 1421446, at *4 (refusing to grant declaratory judgment where "[t]he core issues of th[e] controversy concern[ed] whether the parties entered into enforceable contracts and, if so, whether the defendants breached the contracts"); *Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*, 2002 WL 257573,

at * 10 (N.D. Tex. Feb. 19, 2002) (Fitzwater, J.) (dismissing declaratory judgment action that sought resolution of substantive claims that were already basis of lawsuit).

B

After considering the factors, the court declines to consider Shellpoint's declaratory judgment counterclaim. Although Shellpoint frames its motion for declaratory judgment as seeking a resolution of the scope, validity, and enforcement of the Settlement Agreement, the court has addressed each of these issues through its preceding analysis of the Settlement Agreement. *See supra* § IV. Moreover, the court has raised *sua sponte* its intent to grant summary judgment in Shellpoint's favor for a recovery of attorney's fees under the Settlement Agreement. *See supra* § VI. It is not apparent what additional clarification the court could provide through a declaratory judgment without either engaging in speculation or providing duplicative guidance. Therefore, without prejudice to Shellpoint later alleging a declaratory judgment action that would not be resolved in the context of its breach of contract claim, the court denies Shellpoint's motion for summary judgment on this issue.

*   *   *

For the reasons stated, the court grants Shellpoint's motion for summary judgment on Summit's claims for declaratory and injunctive relief, denies Shellpoint's motion for summary judgment on its breach of contract counterclaim and its counterclaim for declaratory judgment, and raises *sua sponte* that Shellpoint is entitled to recover attorney's fees under the terms of the Settlement Agreement. The court grants Summit 21 days from the date this memorandum opinion and order is filed to file an opposition response, brief, and

appendix that addresses the ground on which the court has raised summary judgment *sua sponte*.

      **SO ORDERED**.

      September 28, 2017.


                                 _____
                                   SIDNEY A. FITZWATER
                                   UNITED STATES DISTRICT JUDGE